IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOHN ROE NO. 8, JOHN ROE NO. 16, JOHN ROE NO. 17, JOHN ROE NO. 18, AND JOHN ROE NO. 19,<br><br>        Plaintiffs,<br><br>    vs.<br><br>JAY RAM aka GARY WINNICK; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; DOE NON-PROFIT ENTITIES 1-10; and DOE GOVERNMENTAL ENTITIES 1-10,<br><br>        Defendants.<br>_____ | CIVIL 14-00027 LEK-RLP |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM, AND MOTION FOR DETERMINATION OF INSUFFICIENCY OF SERVICE OF PROCESS**

On February 12, 2014, Defendant Jay Ram, also known as Gary Winnick ("Defendant"), filed his Motion to Dismiss First Amended Complaint for Failure to State a Claim, and Motion for Determination of Insufficiency of Service of Process ("Motion"). [Dkt. no. 8.] On July 14, 2014, Plaintiffs John Roes Nos. 8, 16, 17, 18 and 19 ("Plaintiffs") filed their memorandum in opposition. [Dkt. no. 24.] This matter came on for hearing on August 4, 2014. After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, Defendant's Motion is HEREBY DENIED for the reasons set forth below.

On October 21, 2013, Plaintiffs filed the First Amended Complaint ("Complaint") in the Circuit Court of the First Circuit, State of Hawai`i. [Notice of Removal (dkt. no. 1).] On January 22, 2014, Defendant removed the action to this Court, asserting diversity jurisdiction since Defendant is a Florida citizen and Plaintiffs are citizens of Hawai`i, Washington, and California. [<u>Id.</u>]

In the Complaint, Plaintiffs allege that, between 1983 and 1987, Defendant either adopted, began to take care of or, in the case of John Roe No. 19, met Plaintiffs. [<u>Id.</u>, Exh. A (Complaint) at ¶¶ 2, 6-7, 11-12, 16, 20.] From 1983 to 1987, Defendant lived in Corning, California, and he moved with John Roes 8, 16, 17 and 18 to Hakalau, Hawai`i in 1987, where he operated a farm.[1] Plaintiffs allege that, from approximately 1984 until 1993, Defendant isolated the boys and sexually abused them. [<u>Id.</u> at ¶¶ 1-22.] They further allege that Defendant's "sexual abuse and exploitation" were "part of a larger pattern of sexual abuse[,]" which caused Plaintiffs physical and mental harm. [<u>Id.</u> at ¶¶ 23-25.]

The Complaint alleges the following claims: sexual assault and battery (Count I); intentional infliction of

---

[1] It appears, though it is not clearly alleged, that John Roe No. 19 met Defendant in Hawai`i.

emotional distress (Count II); grossly negligent infliction of emotional distress (Count III); and punitive damages (Count IV). Plaintiffs seek the following relief: general, special and punitive damages; attorneys' fees and costs; pre- and post-judgment interest; and all other appropriate relief. [Id. at pg. 12.]

## DISCUSSION

Defendant challenges this lawsuit on two grounds: (1) that he was improperly served with process, and (2) that Haw. Rev. Stat. § 657-1.8(b) ("Section (b)"), under which Plaintiffs bring the lawsuit, is unconstitutional. The Court rejects both of these challenges for the reasons that follow.

## I.  Service of Process

Defendant moves to dismiss the Complaint due to insufficient process, pursuant to Fed. R. Civ. P. 12(b)(4). [Mem. in Supp. of Motion at 30-31.]  In support of this part of the Motion, Defendant offers the declaration of his son, Prahlad Jamieson, who attests that he, Mr. Jamieson, never physically received any papers from the process server on January 2, 2014 because he let them fall to the ground and never picked them up or read them, and that the wind blew them away.  [Id., Decl. of Prahlad Jamieson ("Jamieson Decl.").]

One way to properly serve an individual is to "leav[e] a copy of [the summons and the complaint] at the individual's

dwelling or usual place of abode with someone of suitable age and discretion who resides there[.]" Fed. R. Civ. P. 4(e)(2)(B); <u>see also</u> Haw. R. Civ. P. 4(d)(1)(A) (using nearly identical language). The Jamieson Declaration makes clear that Defendant was properly served by this method. First, Mr. Jamieson admits that the property where the papers were delivered was his and Defendant's home, that is, Defendant's "dwelling or usual place of abode." [Jamieson Decl. at 1.] Second, Mr. Jamieson's four-page declaration demonstrates that he is of "suitable age and discretion," as confirmed by the declaration of the process server, Lynn Anderson, offered by Plaintiffs. [Mem. in Opp., Decl. of Lynn A. Anderson ("Anderson Decl.") at 3 (attesting that Jamieson "looked to be about 18").] Third, Mr. Jamieson attests that Ms. Anderson told him "something like, 'I have some papers for you.'" [Jamieson Decl. at 2.] While Mr. Jamieson denies having physically received the papers from her or that he even saw them until the next morning "strewn on the street," under the circumstances, Defendant was sufficiently served.

In addition, the Court affords considerable weight to the detailed statement by Ms. Anderson,[2] who describes Defendant's attempts to evade receipt of service, including by

---

[2] There is nothing in the record to dispute that Ms. Anderson was acting as an objective third-party in the matter, and that Ms. Anderson has more than twenty years experience as a process server. [Anderson Decl. at 1.]

4

not answering the front door, and rolling up the car window and driving directly past her when she attempted to serve him directly. [Anderson Decl. at 2-3.] In contrast to Mr. Jamieson, Ms. Anderson attests that she gave the papers to Mr. Jamieson, who took them, and then intentionally dropped them. [Id. at 3.]

Fed. R. Civ. P. 4 is "a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." S.E.C. v. Ross, 504 F.3d 1130, 1140 (9th Cir. 2007) (citation and internal quotation marks omitted). Not only does Defendant have notice of the Complaint (which he admitted in the Notice of Removal at ¶ 1), he has engaged counsel who removed the case to this Court and now has briefed and argued this Motion. Moreover, this is in spite of apparent attempts to avoid service, see Anderson Decl. at 2-3; Mem. in Opp., Decl. of Mark Gallagher at ¶¶ 3-4 & Exh. 1 (summons returned as "refused unclaimed, gate closed"). The Court FINDS that Ms. Anderson's actions more than suffice to fulfill the requirements of Rule 4, and thus Defendant has been sufficiently served. See Henderson v. United States, 517 U.S. 654, 672 (1996) (holding that "the core function of service is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections" (footnote omitted)); cf. Doe v. Qi, 349 F. Supp. 2d 1258, 1275 & n.5 (N.D. Cal. 2004) (finding service

proper and collecting cases where the defendants or their agents did not actually take possession of papers but were found to have been served).  Thus, the Court DENIES the Motion as to Defendant's claim of insufficient service of process.

## II.  Constitutional Challenge

The majority of Defendant's memorandum in support of the Motion focuses on his argument that Section (b) is unconstitutional under the United States and Hawai`i Constitutions, which the Court now considers in turn.

### A.  Section (b)

Haw. Rev. Stat. § 657-7, which was most recently amended in 1972, provides:  "Actions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after, except as provided in section 657-13."  Section 657-13 provides, *inter alia*, that individuals who are injured when they are minors can bring claims within two years of reaching age eighteen.  Defendant argues that, under these sections, the latest any of Plaintiffs could have brought their claims would have been 1994.[3]  [Mem. in Supp. of Motion at 4-5.]

_____

[3] Further, he argues that since none of Plaintiffs claim that they had repressed memories of the abuse, the Court may not toll accrual until discovery, as recognized in Dunlea v. Dappen, 83 Hawai`i 28, 36, 924 P.2d 196, 204 (1996) *abrogated on other grounds by* Hac v. Univ. of Hawaii, 102 Hawai`i 92, 73 P.3d 46 (2003).  [Mem. in Supp. of Motion at 5.]

On April 24, 2012, the Hawai`i Legislature approved –
effective immediately – legislation extending the statute of
limitations for damage actions brought by victims of childhood
sexual abuse.  In addition, the statute, codified at Haw. Rev.
Stat. § 657-1.8, includes a two-year window (Section (b))
allowing purported victims to bring lawsuits that would have been
barred by the prior statute of limitations.[4]  Section 657-1.8
provides in pertinent part, as amended on June 20, 2014:

> (a) Notwithstanding any law to the contrary,
> except as provided under subsection (b), no action
> for recovery of damages based on physical,
> psychological, or other injury or condition
> suffered by a minor arising from the sexual abuse
> of the minor by any person shall be commenced
> against the person who committed the act of sexual
> abuse more than:
>
>> (1) Eight years after the eighteenth birthday
>> of the minor or the person who committed the
>> act of sexual abuse attains the age of
>> majority, whichever occurs later; or
>>
>> (2) Three years after the date the minor
>> discovers or reasonably should have
>> discovered that psychological injury or
>> illness occurring after the age of minor's
>> eighteenth birthday was caused by the sexual
>> abuse,
>
> whichever comes later.
>
> . . . .
>
> **(b) For a period of four years after April 24,
> 2012, a victim of child sexual abuse that occurred
> in this State may file a claim in a circuit court**

---

[4] Section (b) was extended another two years on June 20,
2014.

**of this State against the person who committed the act of sexual abuse if the victim is barred from filing a claim against the victim's abuser due to the expiration of the applicable civil statute of limitations that was in effect prior to April 24, 2012.**

. . . .

(c) A defendant against whom a civil action is commenced may recover attorney's fees if the court determines that a false accusation was made with no basis in fact and with malicious intent.   A verdict in favor of the defendant shall not be the sole basis for a determination that an accusation had no basis in fact and was made with malicious intent.  The court shall make an independent finding of an improper motive prior to awarding attorney's fees under this section.

(d) In any civil action filed pursuant to subsection (a) or (b), a certificate of merit shall be filed by the attorney for the plaintiff, and shall be sealed and remain confidential.  The certificate of merit shall include a notarized statement by a:

     (1) Psychologist licensed pursuant to chapter 465;

     (2) Marriage and family therapist licensed pursuant to chapter 451J;

     (3) Mental health counselor licensed pursuant to chapter 453D; or

     (4) Clinical social worker licensed pursuant to chapter 467E;

who is knowledgeable in the relevant facts and issues involved in the action, who is not a party to the action.

The notarized statement included in the certificate of merit shall set forth in reasonable detail the facts and opinions relied upon to conclude that there is a reasonable basis to believe that the plaintiff was subject to one or

more acts that would result in an injury or
condition specified in [subsection] (a).

(Emphasis added; brackets in original.)  Plaintiffs bring this

lawsuit under Section (b), see Complaint at pg. 3, ¶ h

("Plaintiffs have satisfied the requirements of Hawaii Revised

Statutes, Section 657, specifically Act 68 enacted in 2012."),

which Defendant challenges.

### B.    **Facial Challenges**

Defendant has made clear – both in his memorandum in

support of the Motion and through his counsel at the hearing on

the Motion – that he is not bringing an "as applied" challenge to

Section (b).  The Court, therefore, limits its discussion and

disposition to the facial challenges to Section (b) as presented

in the Motion.  Defendant brings his challenge pursuant to the

United States and Hawai`i Constitutions.

### 1.    **Federal Constitutional Challenge**

The United States Supreme Court has held that "a

plaintiff can only succeed in a facial challenge by

establish[ing] that no set of circumstances exists under which

the Act would be valid, i.e., that the law is unconstitutional in

all of its applications."  Wash. State Grange v. Wash. State

Republican Party, 552 U.S. 442, 449 (2008) (alteration in Wash.

State Grange) (citation and internal quotation marks omitted).

Alternatively, "a facial challenge must fail where the statute

has a plainly legitimate sweep."  Id. (citation and internal

quotation marks omitted).

Defendant has failed to make a sufficient showing under either of these tests.[5] The substance of his argument for facial unconstitutionality amounts to the following:

> "This is an incredibly unfair statute to any person against whom sex abuse allegations are made. Sex abuse allegations are easily made and difficult to refute. All that is required is a mere claim, based on no substantial evidence at all but the claim itself. Such allegations make the defendant out to be a 'monster' and put the defendant in the position of having to run around trying to secure potential witnesses from decades past." [Mem. in Supp. of Motion at 20.]

> "This class of cases is subject to abuse, false allegations, lack of evidence, and extremely stale claims. Claims are easy to make - merely based on verbal claims often decades old with no other evidentiary support whatsoever - and hard to refute while the alleged sex abusers are publically humiliated and assumed to be guilty." [Id. at 22.]

While the Court acknowledges that there may be certain evidentiary aspects of Defendant's case, and others arising from twenty-year-old incidents, that make them difficult to defend

---

[5] The Supreme Court also recognizes a third test, finding a statute facially unconstitutional where a "substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." Wash. State Grange, 552 U.S. at 449 n.6 (citation and internal quotation marks omitted). However, it has expressly limited this overbreadth test to the first amendment context, see United States v. Stevens, 559 U.S. 460, 473 (2010), and only finds them successful where the parties specifically describe "the instances of arguable overbreadth[,]" Wash. State Grange, 552 U.S. at 449 n.6 (citation omitted). Defendant has not raised the argument, let alone shown why it should apply in this context or how Section (b) is overbroad. Therefore, the Court does not here analyze this test.

against, his arguments regarding unfairness fall far short of establishing that Section (b) is "unconstitutional in all of its applications." See Wash. State Grange, 552 U.S. at 449. For example, Section (b) could have the effect of reviving a claim that ran on April 23, 2012. Defendant makes no showing that such a claim would produce the same purported constitutional failings regarding staleness as with his case. Further, all sex abuse claims share some of the aspects that Defendant argues are unfair and, for this very reason, § 657-1.8 includes safeguards such as the provision penalizing false claims and the certification requirement. See § 657-1.8(c), (d). The Court CONCLUDES that, since Defendant has made an insufficient showing that Section (b) is unconstitutional as to all of its applications, his facial challenge under the federal constitution fails.[6]

---

[6] Similarly, Defendant makes no showing that Section (b)'s sweep is illegitimate. See Wash. State Grange, 552 U.S. at 449. The purpose of the act that enacted § 657-1.8, Act 68, was to respond to the facts that: "child sexual abuse is an epidemic that unfortunately is not adequately addressed because a vast majority of child sexual abuse victims fail to report their sexual assaults to the authorities"; "[s]tudies have estimated that between sixty to eighty percent of child sexual abuse victims withhold disclosure"; and "studies examining latency in disclosure report an average delay of three to eighteen years." Conf. Comm. Rep. No. 44-14, April 24, 2014, slip copy, at 2. Defendant does not attempt to show that the sweep of the act is too broad for its purpose, or argue that there should be a balancing of harms between the potential class of plaintiffs and defendants. For these reasons, the Motion fails under this test as well.

Further, Defendant's argument, based on an analysis of what he claims to be the only four Supreme Court cases addressing revived statutes of limitations (and a single Ninth Circuit case), does not change this result.[7]  He argues, in essence, that the cases he analyzes stand for the proposition that statutes that revive claims and cause special hardships or oppressive effects on a class of defendants are presumptively facially unconstitutional.  [Mem. in Supp. of Motion at 12.]  This reading reverses the proper presumption and stretches these cases far beyond their holdings.  Rather, together these cases (and others) hold that, since statutes of limitations extinguish remedies and not claims, it is proper for a legislature to set aside a statute of limitations so long as it does not affect a vested right, such as a right to real or personal property (or, at best, a vested reliance interest).

The rule is most extensively discussed in <u>Chase Securities Corp. v. Donaldson</u>, 325 U.S. 304 (1945), in which the

---

[7] The four Supreme Court cases are <u>Campbell v. Holt</u>, 115 U.S. 620 (1885), <u>Chase Securities Corp. v. Donaldson</u>, 325 U.S. 304 (1945), <u>International Union of Electrical, Radio & Machine Workers, AFL-CIO, Local 790 v. Robbins & Myers, Inc.</u>, 429 U.S. 229 (1976), and <u>Plaut v. Spendthrift Farm, Inc.</u>, 514 U.S. 211 (1995).  [Mem. in Supp. of Motion at 8-16, 19-24.]  The Court questions whether these are, in fact, the only Supreme Court cases that address or are directly relevant to the issue.  <u>See, e.g.</u>, <u>Gange Lumber Co. v. Rowley</u>, 326 U.S. 295, 298 (1945) (addressing an amendment to the Washington Industrial Insurance Act, which the defendant argued had "been applied retroactively to revive a claim barred by the preexisting law, to its substantial detriment" (footnote omitted)).

Supreme Court reconsidered and reaffirmed the holding of Campbell v. Holt, 115 U.S. 620 (1885).[8]  Defendant quotes from these cases selectively and claims that they support his interpretation of the rule against retroactivity.  However, the Chase Court's description of the holding of Campbell is quite clear:

> In Campbell v. Holt, supra, this Court held that where lapse of time has not invested a party with title to real or personal property, a state legislature, consistently with the Fourteenth Amendment, may repeal or extend a statute of limitations, even after right of action is barred thereby, restore to the plaintiff his remedy, and divest the defendant of the statutory bar.  This has long stood as a statement of the law of the Fourteenth Amendment, and we agree with the court below that its holding is applicable here and fatal to the contentions of appellant.

Chase, 325 U.S. at 311-12 (footnote omitted).

This rule, which was expressly upheld in Chase, shows that it is not the revival of the claim that is repugnant to the constitution, but the taking of vested property.  It has been reiterated by both the Supreme Court and the Ninth Circuit.  See, e.g., Stogner v. California, 539 U.S. 607, 632 (2003) (citing Chase for the proposition that the extension of "an expired *civil*

---

[8] The other two cases, Robbins & Myers and Plaut focus on whether Congress intended the statutes at issue to be retroactive and whether retroactive revival, in cases that had actually been decided on statute of limitations grounds, impinged on the constitutional right of federal courts to make final judgments.  Thus, neither are directly on point, and their short discussions of Chase support the Court's reading of that case and the rules it articulates.  See Robbins & Myers, 429 U.S. at 243-44; Plaut, 514 U.S. at 229.

limitations period can unconstitutionally infringe upon a 'vested right'" (emphasis in Stogner)); Robbins & Myers, 429 U.S. at 243 (explaining that Chase "states the applicable constitutional test"); Cassirer v. Thyssen-Bornemisza Collection Found., 737 F.3d 613, 619-20 (9th Cir. 2013) ("Campbell applies only when the property at issue had vested and had become the defendant's. . . . Accordingly, we have explained that '[w]here a lapse of time has not invested a party with title to real or personal property, a state legislature may extend a lapsed statute of limitations without violating the fourteenth amendment, regardless of whether the effect is seen as creating or reviving a barred claim.'" (some alterations in Cassirer) (quoting Starks v. S.E. Rykoff Co., 673 F.2d 1106, 1109 (9th Cir. 1982)).

Defendant does not argue that Section (b) has taken a vested right from him. Nor can he. The only thing that has been taken from him by Section (b) is his immunity from lawsuits for alleged child sex abuse. And that immunity was created in § 657-7 and § 657-13 by the same legislature that took it away with the passage of Section (b). Chase shows that this does not violate Defendant's due process rights and explains why:

> **Statutes of limitation** find their
> justification in necessity and convenience rather
> than in logic. They represent expedients, rather
> than principles. They are practical and pragmatic
> devices to spare the courts from litigation of
> stale claims, and the citizen from being put to

14

his defense after memories have faded, witnesses
have died or disappeared, and evidence has been
lost.  Order of Railroad Telegraphers v. Railway
Express Agency, 321 U.S. 342, 349, 64 S. Ct. 582,
586, 88 L. Ed. 788.  They are by definition
arbitrary, and their operation does not
discriminate between the just and the unjust
claim, or the voidable and unavoidable delay.
**They have come into the law not through the
judicial process but through legislation.  They
represent a public policy about the privilege to
litigate.  Their shelter has never been regarded
as what now is called a "fundamental" right or
what used to be called a "natural" right of the
individual**.  He may, of course, have the
protection of the policy while it exists, but the
history of pleas of limitation shows them to be
**good only by legislative grace and to be subject
to a relatively large degree of legislative
control**.

This Court, in Campbell v. Holt, adopted as a
working hypothesis, as a matter of constitutional
law, the view that statutes of limitation go to
matters of remedy, not to destruction of
fundamental rights. . . .

Chase, 325 U.S. at 314 (footnote omitted) (emphases added); see

also Honda Motor Co., Ltd. v. Coons, 469 U.S. 1123, 1126 (1985)

("[S]tatutes of limitations represent a public policy decision

about the privilege to litigate.  Their shelter has never been a

fundamental or natural right, but is provided only by legislative

grace, subject to a relatively large degree of legislative

control.").  Chase allows the Hawai`i legislature to do exactly

what it did in passing Section (b): to use its "large degree of

legislative control" to change the statute of limitations for a

class of cases.[9]

At best, <u>Chase</u> may stand for the proposition that,
where the extension of a statute of limitations creates "special
hardships or oppressive effects" on a class of individuals
**because they have relied on the original statute of limitations
in creating a course of conduct**, a statute may be
unconstitutional.  <u>See</u> <u>Chase</u>, 325 U.S. at 315.  Defendant quotes
a short section of <u>Chase</u> to argue that Section (b) causes him,
and those similarly situated, to experience "special hardships or
oppressive effects" and, thus, violates his due process rights.
[Mem. in Supp. of Motion at 12-13.]  However, the complete
quotation provides for a much narrower exception:

> The essential holding in <u>Campbell v. Holt</u>, so
> far as it applies to this case, is sound and
> should not be overruled.  The Fourteenth Amendment
> does not make an act of state legislation void
> merely because it has some retrospective
> operation.  What it does forbid is taking of life,
> liberty or property without due process of law.
> **Some rules of law probably could not be changed
> retroactively without hardship and oppression, and
> this whether wise or unwise in their origin.**
> Assuming that statutes of limitation like other
> types of legislation could be so manipulated that
> their retroactive effects would offend the

---

[9] Another line of cases, described in <u>Chase</u>, limits this
rule insofar as some statutes that create new causes of action
expressly tie limitations periods to the substance of those
actions.  In those cases, the running of the statutes may
actually cause the rights to vest.  <u>Chase</u>, 325 U.S. at 312 n.8
(limiting <u>William Danzer & Co. v. Gulf & Ship Island R. Co.</u>, 268
U.S. 633 (1925), and <u>Davis v. Mills</u>, 194 U.S. 451 (1904)).
However, this is not the situation before the Court, and
Defendant does not argue that it is.

Constitution, certainly it cannot be said that lifting the bar of a statute of limitation so as to restore a remedy lost through mere lapse of time is per se an offense against the Fourteenth Amendment.  Nor has the appellant pointed out special hardships or oppressive effects which result from lifting the bar in this class of cases with retrospective force.  **This is not a case where appellant's conduct would have been different if the present rule had been known and the change foreseen.  It does not say, and could hardly say, that it sold unregistered stock depending on a statute of limitation for shelter from liability.**  The nature of the defenses shows that no course of action was undertaken by appellant on the assumption that the old rule would be continued.  **When the action was commenced, it no doubt expected to be able to defend by invoking Minnesota public policy that lapse of time had closed the courts to the case, and its legitimate hopes have been disappointed.  But the existence of the policy at the time the action was commenced did not, under the circumstances, give the appellant a constitutional right against change of policy before final adjudication.  Whatever grievance appellant may have at the change of policy to its disadvantage, it had acquired no immunity from this suit that has become a federal constitutional right. . . .**

Chase, 325 U.S. at 315 (emphases added).  Rather than creating

the broad rule that Defendant advocates, the Supreme Court left

open the possibility that, in certain circumstances, a party

might successfully argue that its detrimental reliance on a

statute of limitations could, essentially, create a vested

interest.  Defendant does not provide any case that invalidated a

statute based on this standard, nor any facts that he or other

similarly situated individuals detrimentally relied on the former

statute of limitations.[10]  Thus, even if there were a plausible constitutional argument based on detrimental reliance, Defendant's showing is insufficient here.  For all of these reasons, the Court REJECTS Defendant's federal constitutional challenge and DENIES this part of the Motion.[11]

## 2. **Hawai`i State Constitutional Challenge**

Defendant requests that this Court certify the question of whether Section (b) violates the Due Process Clause of the Hawai`i Constitution to the Hawai`i Supreme Court.  [Mem. in Supp. of Motion at 8, 24.]

"This court may certify a question to the Hawaii Supreme Court when it concerns 'law of Hawaii that is determinative of the cause and . . . there is no clear controlling precedent in the Hawaii judicial decisions . . . .'"

_____

[10] Nor can the Court imagine a set of facts that would allow alleged child sex offenders to evade lawsuits by arguing that in the ensuing years they had based their conduct on a short statute of limitations.

[11] Although not binding on this Court or on Hawai`i state courts, this Court notes that its conclusion is consistent with other decisions addressing statutes similar to Section (b), that create open periods for filing previously-barred child sexual abuse claims.  See Melanie H. v. Doe 1, Civil No. 04-1596WQH-(WMc), slip op. at 16, 19 (rejecting argument that California's SB 1779, which created a one-year open window for child sex abuse claims, "unconstitutionally vitiate[d] vested property rights" and, quoting Chase to reject facial due process challenge); Sheehan v. Oblates of St. Francis de Sales, 15 A.3d 1247, 1252, 1258-59 (Del. 2011) (relying on Chase and Campbell and rejecting the same arguments as to one-year window created by 10 Del. C. § 8145).

<u>Saiki v. LaSalle Bank Nat'l Ass'n as Tr. for Structured Asset</u>
<u>Inv. Loan Trust Series 2003-BC2</u>, Civil No. 10-00085 JMS/LEK, 2011
WL 601139, at *6 (D. Hawai`i Feb. 10, 2011) (quoting Haw. R. App.
P. 13(a)).  The court, however, should not certify questions when
the answer is reasonably clear and the court can, using its best
judgment, predict how the Hawai`i Supreme Court would decide the
issue.  <u>See id.</u> (citing <u>Helfand v. Gerson</u>, 105 F.3d 530, 537 (9th
Cir. 1997); <u>Pai`Ohana v. United States</u>, 875 F. Supp. 680, 700 (D.
Haw. 1995)).  Since the answer here is reasonably clear, the
Court denies the request.

    The Hawai`i Supreme Court, "as a general matter, has
long adhered to the proposition that (1) legislative enactments
are presumptively constitutional; (2) a party challenging a
statutory scheme has the burden of showing unconstitutionality
beyond a reasonable doubt; and (3) the constitutional defect must
be clear, manifest, and unmistakable."  <u>In re Guardianship of</u>
<u>Carlsmith</u>, 113 Hawai`i 236, 239, 151 P.3d 717, 720 (2007)
(citation and internal quotation marks omitted).  It has also
recognized that a "facial challenge, by nature, implicates no
facts in particular as it is purely a question of law."  <u>Jou v.</u>
<u>Dai-Tokyo Royal State Ins. Co.</u>, 116 Hawai`i 159, 166, 172 P.3d
471, 478 (2007) (citations omitted).  For the same reasons as
stated above, <u>see</u> *supra* Section II.B.1., the Court concludes that
it is reasonably clear that the Hawai`i Supreme Court would hold

that Defendant's bare claims of unfairness are insufficient to show unconstitutionality beyond a reasonable doubt, and that the purported defect is "clear, manifest, and unmistakable."

The Court's conclusion is bolstered by Hawai`i Supreme Court cases discussed by both Plaintiffs and Defendant, which found statutes, that extended indefinitely statutes of limitations on civil claims, constitutional. See Mem. in Supp. of Motion at 24-30; Mem. in Opp. at 4, 6-7.[12]  In particular, in Roe v. Doe, 59 Haw. 259, 581 P.2d 310 (1978), the Hawai`i Supreme Court rejected a due process challenge to an amendment to Hawaii's Uniform Parentage Act, Haw. Rev. Stat. Chapter 584, that created a three-year window, similar to Section (b), which revived all paternity suits barred by statutes of limitations. The Hawai`i Supreme Court applied, inter alia, Campbell, Chase and Robbins & Myers, and found that the defendant fathers had no vested right to immunity from paternity suits.  Roe, 59 Haw. at 265-69, 581 P.2d at 315-17.  The Hawai`i Supreme Court explained:

---

[12] The Court notes that, in addition to the Hawai`i Supreme Court cases, Plaintiffs' memorandum in opposition to the Motion cites to numerous court orders that are not readily available. Plaintiffs' failure to attach copies of these orders to their memorandum violates Rule LR7.6 of the Local Rules of Practice of the United States District Court for the District of Hawai`i, and the Court will not consider such orders in the future.  See Local Rule LR7.6 ("If citation is made to an authority that is not easily available through Westlaw, Lexis/Nexis, or a comparably accessible service, two (2) courtesy copies of the authority shall be submitted to the court concurrently with the document containing the citation.").

> We are unable to accept defendants'
> proposition that the expiration of a statute of
> limitations confers upon a defendant any vested
> right or property interest which remains
> undisturbed by subsequent legislative enactments.
> The right to defeat an action by the statute of
> limitations has never been regarded as a
> fundamental or vested right.

Id. at 269, 581 P.2d at 316-17 (some citations omitted) (citing

Chase, 325 U.S. at 314, 65 S. Ct. 1137; Campbell, 115 U.S. at

628, 6 S. Ct. 209).

Further, the Hawai`i Supreme Court expressly rejected

the exact argument made by Defendant here: "In our opinion, the

legislative revival of claims that are even decades old is not,

of itself, unconstitutional per se." Id. at 270, 581 P.2d at

317. Instead, and interpreting Chase consistent with this

Court's reading that it creates a narrow detrimental reliance

exception, the Hawai`i Supreme Court laid out the following test

and rationale:

> By enacting HRS § 584-7 in its current form,
> the legislature effected a change in public policy
> regarding the prosecution of stale claims.
> However, this new policy, which greatly extends
> the applicable period of limitations, can be
> sustained only so long as the putative father's
> right to due process is not violated by the
> retrospective application of the statute. See
> Chase Securities, supra. Therefore, we prefer to
> adopt a case-by-case approach to the question of
> the constitutional permissibility of the revival
> of paternity claims barred by the former statute
> of limitations. If a putative father, named in a
> paternity proceeding, were able to demonstrate
> that he had acted in **specific reliance** on the bar
> of the statute of limitations and that special
> hardships or oppressive results would follow from

21

> the lifting of the bar, retrospective application
> of HRS § 584-7 might not be constitutionally
> permissible.  Absent such **a demonstration of
> direct reliance and resultant hardship**, it would
> not be possible to say that the defendant was
> deprived of any constitutional right.

<u>Roe</u>, 59 Haw. at 270, 581 P.2d at 318.

Although it may be a closer question as to how the Hawai`i Supreme Court would decide an as-applied challenge to Section (b), that issue is not before the Court.  The Court FINDS that it is reasonably clear that the Hawai`i Supreme Court would not find Section (b) unconstitutional on its face, and thus DENIES the Motion as to the facial challenge under the Hawai`i Constitution.

## **CONCLUSION**

On the basis of the foregoing, Defendant's Motion to Dismiss First Amended Complaint for Failure to State a Claim, and Motion for Determination of Insufficiency of Service of Process, filed February 12, 2014, is HEREBY DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, August 29, 2014.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**JOHN ROE NO. 8, ET AL. VS. JAY RAM, ETC., ET AL; CIVIL 14-00027 LEK-RLP; ORDER DENYING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM, AND MOTION FOR DETERMINATION OF INSUFFICIENCY OF SERVICE OF PROCESS**